IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OLIVET BOYS' Y GIRLS' CLUB OF** : | CIVIL ACTION |
| **READING AND BERKS COUNTY,** : | |
| et al., : | |
|     **Plaintiffs** : | |
| : | |
| v. : | NO. 5:08-cv-4702 |
| : | |
| **WACHOVIA BANK, N.A.,** : | |
|     **Defendant** : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                                 July 1, 2009

**I. INTRODUCTION**

Wachovia Bank has filed a motion to dismiss this ERISA and securities case. After hearing oral argument and upon consideration of the motion and plaintiffs' response, I will dismiss this case with prejudice.

**II. FACTS**

The facts in this case are straightforward. The plaintiffs, Olivet Boys' & Girls' Club of Reading and Berks County ("Club") and Olivet Boys' & Girls' Club of Reading and Berks County Money Purchase Pension Plan ("Plan") claimed that defendant Wachovia Bank breached its fiduciary duty under ERISA, as well as under the common law, misrepresented information and violated the Securities Exchange Act's section 10(b).

In September 2007, Wachovia sent a form letter to the Club and others who had

invested in the Evergreen Limited Duration Fund ("Limited Duration Fund") explaining that the fund would be merging into the Evergreen Ultra Short Opportunities Fund ("Ultra Short Fund") and requesting that the Club consent to the exchange of the Plan's shares of the former fund for those of the new Ultra Short Fund. All of the Plan's assets were invested in the Limited Duration Fund.

Plaintiffs claim that in the form letter, Wachovia misrepresented that the two Funds' investment objectives and principal investment strategies were "substantially similar." Complaint at ¶¶ 13, 24, 27, 39; Ex. B. Further, the plaintiffs allege that a "simple review" of the funds' investment strategies "makes it clear" that they are <u>not</u> similar. <u>Id.</u> at ¶ 41. Nevertheless, plaintiffs consented to the exchange of their shares on October 1, 2007. As a result of Wachovia's alleged misrepresentation, plaintiffs claim they lost $200,000.

### III. DISCUSSION

### A. ERISA Claims Will Be Dismissed

There are four necessary elements of a breach of fiduciary duty claim under ERISA section 1109(a): (1) defendant's status as ERISA fiduciary acting as a fiduciary; (2) a misrepresentation by defendant; (3) the materiality of the misrepresentation; and (4) detrimental reliance by plaintiff on the misrepresentation. <u>Stanford v. Foamex L.P.</u>, No. 07-4225, 2008 WL 3874823 at 31 - 32 (E.D. Pa. 2008) (citing <u>Burstein v. Retirement Account Plan for Employees of Allegheny Health Education and Resources Foundation</u>,

334 F.3d 365, 384 (3d Cir. 2003)).  In this case, the first and fourth element pose particular problems for the plaintiffs.

**1. Wachovia is Not an ERISA Fiduciary**

Wachovia cannot be a fiduciary under ERISA because it did not render investment advice.  Even plaintiffs describe Wachovia's actions with respect to the new fund as marketing.  Complaint ¶13 and 23.  It appears that the Third Circuit has not addressed the issue of whether marketing constitutes ERISA's individualized investment advice under § 1002(21)(A)(ii), but at least one other district court has addressed the issue.  In <u>Black v. Bresee's Oneonta Dep't Store, Inc. Sec. Plan</u>, 919 F. Supp. 597, 606 (N.D.N.Y. 1996), the Northern District of New York held that mere marketing of a plan does not implicate fiduciary conduct.

Plaintiffs' response states that they could not possibly allege facts to meet the rule's requirement of "individualized investment advice" because they "have no way of knowing what advice Wachovia provided to other clients."  Resp. (Doc. # 18) at page 13.  However, none of the facts or circumstances of this case justify plaintiffs pleading something less than the rules require.  Simply because plaintiffs do not know who *else* may have gotten the same advice as them, does not mean that the communication from Wachovia was not "advice."

The relevant ERISA regulations explain that fiduciaries must have discretionary authority with respect to purchasing or selling securities for the plan on a regular basis,

3

pursuant to a mutual agreement that the services "will serve as a primary basis for investment decisions" and that the investment advice will be "individualized." 29 C.F.R. § 2510.3-21(c); Hussey v. Chase Manhattan Bank, 418 F. Supp. 2d 702, 714 (E.D. Pa. 2005) (a person is a fiduciary under ERISA only to the extent "he has any discretionary authority or discretionary responsibility in the administration of such plan"). Here, the plaintiffs have not alleged and appear unable to show, under the facts as they describe them, that Wachovia had any discretionary authority over the Plan. In fact, the exchange of the Plan's shares could happen only after the plaintiffs consented. Complaint ¶ 22. Further, it appears that the only "advice" Wachovia ever gave plaintiffs was in the form of (1) a form letter advising them of the merger of the two funds and (2) a contact (the memoranda suggest via telephone) between an unidentified individual at Wachovia and a representative of plaintiffs'. The form letter and phone call do not appear to constitute the sort of arrangement or relationship described in § 1002(21)(A)(ii) or the relevant regulations. Moreover, the agreement between the Club and Wachovia expressly states that Wachovia "has not, and will not, provide investment advice." This agreement is not conclusive proof of the non-fiduciary nature of the parties' relationship because a court must examine the activity in question to determine whether in fact the party is a fiduciary. Srein v. Frankford Trust Co., 323 F.3d 214, 221 (3d Cir. 2003). More than the mailing of a form letter and the placement of a single phone call is required to create a fiduciary relationship where an express agreement provides otherwise. See, e.g., In re RCN Litig.,

No. 04-5068, 2006 WL 753149 (D.N.J. 2006) (granting motion to dismiss ERISA breach of fiduciary duty claim where agreement limited scope of discretionary authority).

Plaintiffs say Wachovia can be liable even as a directed trustee, but, as a matter of law, this theory cannot succeed. Under Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995), directed trustees are "essentially" immune from judicial inquiry as long as they are required to follow the plan administrator's directions. See also DiFelice v. U.S. Airways, Inc., 397 F. Supp. 2d 735, 744 (E.D. Va. 2005); 29 U.S.C. § 1103(a).

**2. Plaintiffs Did Not Detrimentally Rely on "Misrepresentations"**

Wachovia does not concede that its form letter's description of the funds as "substantially similar" is a misrepresentation, but does not argue that issue at this stage because plaintiffs do not allege that they detrimentally or even actually relied on the statement (regardless of whether or not it was a misrepresentation). The only representation with respect to reliance in the complaint is "the Club reasonably relied on the advice provided to it by Wachovia when it consented to the exchange of shares of the two funds." Compl. ¶ 22.

This conclusory claim is undermined by the fact that plaintiffs also allege that "a simple review" would make Wachovia's alleged misrepresentation (that the funds are "substantially similar") "clear." Compl. ¶ 41. If plaintiffs are correct, it makes any reliance on their part unreasonable at best. Under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), these allegations are insufficient because, at most, they create a

5

"suspicion" of a legally recognized right.

### 3. The Plan Cannot Be The Plaintiff

Plaintiffs agree with Wachovia that the Plan cannot be a plaintiff under ERISA and therefore concede that only the Club is plaintiff on the ERISA claims.

### B. 10(b) Claims Must be Dismissed

Under section 10(b) of the Securities Exchange Act of 1934 there is a private cause of action when a defendant engages in the prohibited conduct of using or employing "in connection with the purchase or sale of any security . . .any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). To state a claim for violation of section 10(b), the plaintiff must plead (1) a material misrepresentation or omission; (2) with scienter; (3) in connection with the sale or purchase of a security; (4) reasonable reliance; (5) economic loss or "transaction causation" and; (6) loss causation. Key Equity Investors, Inc. v. Sel-Leb Mktg., Inc., 246 Fed. Appx. 780, 784 (3d Cir. 2007).[1]

#### 1. Scienter

The plaintiffs devote one paragraph to scienter allegations, but that paragraph only

---

[1] Under F.R.C.P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA") the plaintiff faces the following heightened pleading requirements to survive a motion to dismiss: (1) specify each misleading statement and the reason why the statement(s) is misleading; (2) state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind. Tellabs v. Makor Isssues & Rights, Ltd., 127 S.Ct. 2499, 2508 (2007).

contains the legal standard and vague descriptions of Wachovia's conduct such as "conscience [sic] misbehavior" and "recklessness" and "an extreme departure from the standards of ordinary care." Compl. ¶ 42. These conclusions are not enough under the pleading standard as interpreted and explained in this circuit. For example, in <u>Winer Family Trust v. Queen</u>, 503 F.3d 319 (3d Cir. 2007), the Third Circuit affirmed the dismissal of a 10(b) claim under similar (but more egregious) facts because "a reasonable person would not deem the inference of scienter cogent and at least as compelling as any non-culpable inference." <u>Id.</u> at 329-30. In <u>Winer</u>, there were many statements by defendant about both its business relationship with another company, as well as renovations at one of its plants and financial losses. There were several communications and press releases at issue in <u>Winer</u> that occurred over several months. The <u>Winer</u> court found that there was no duty to disclose and the revelation of one fact by defendant did not impose on it a burden to reveal all other material facts. In the absence of *reasons* as to why the statements were misleading or untrue, the Third Circuit agreed with the district court that scienter was inadequately pled. See also <u>Leder v. Shinfield</u>, 06-1805, 2008 WL 2165097 (E.D. Pa. 2008) (10(b) claim dismissed where plaintiffs failed to plead scienter adequately).

**2. Loss Causation**

It appears that plaintiffs have alleged that they would not have purchased shares of the Ultra Short Fund but for Wachovia's "misrepresentation" about the nature of that fund.

This allegation, Wachovia explains, is merely an allegation of "transaction causation" and not "loss causation." Section 10(b) requires both. Plaintiffs have not alleged that Wachovia's misrepresentations actually caused their loss. In other words, the plaintiffs have not established (or even stated) a "direct causal nexus" between Wachovia's misrepresentation and plaintiffs' loss of $200,000. McCabe v. Ernst & Young, LLP, 494 F.3d 418, 425 (3d Cir. 2007). Wachovia argues that any misrepresentation was not a "substantial factor," Id. at 426-27, in causing the loss and that plaintiffs do not even allege that it was.

### 3. Reasonable Reliance

Plaintiffs state that they reasonably relied on Wachovia's misrepresentation about the two funds. However, they do not show a causal nexus between the misrepresentation and their injury. The Third Circuit's standard for "reasonable reliance" appears not to be met here because (1) a fiduciary relationship did not exist between the parties, at least as defined by ERISA; (2) the plaintiffs had the opportunity to detect any fraud (or at least do not allege otherwise); (3) the plaintiffs do not allege that they are unsophisticated (except in their response and only in a conclusory manner); (4) the length of the business relationship is only five years (exclusive of the time plaintiffs related to Wachovia's predecessor, Meridian Bank, which apparently dates to 1977); and (5) the plaintiffs have not alleged that they did not have access to relevant information. See AES Corp. v. Dow Chemical Co., 325 F.3d 174, 178 (3d Cir. 2003).

Plaintiffs argue they "had no reason to dissect the Prospectus" they were given about the two funds because they "had Wachovia's word." This allegation, however, falls short of the Third Circuit's "reasonable reliance" standard. Section 10(b) is not an insurance policy to protect plaintiffs from their own failure to exercise care. It is a sanction for defendants who intentionally mislead.

### C. Common Law Claims Must be Dismissed

The plaintiffs' common law claims are preempted by ERISA. Therefore, the dismissal of their ERISA claims (as recommended above) does not render the common law claims viable. Further, it appears that there is no fiduciary relationship between plaintiff and defendant that would give rise to a breach of fiduciary duty claim.

### IV. CONCLUSION

For the foregoing reasons and because amendment would be futile, I will dismiss this case with prejudice. An appropriate Order follows.